```
UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF NEW YORK
-------------------------------------------------------
In re

              ROXANNE M. DZIEDZIC                           08-14061 B
              d/b/a Hands to Health Chiropractic,

                        Debtor              DECISION & ORDER
-------------------------------------------------------
CHARLES S. TIFFANY and
JOHN W. TIFFANY doing business as
TIFFANY CONSTRUCTION,

                        Plaintiffs

       v.                                   AP 08-1179 B

ROXANNE M. DZIEDZIC,

                        Defendant
-------------------------------------------------------
```

Zdarsky, Sawicki & Agostinelli LLP
Mark J. Schlant, Esq., of counsel
404 Cathedral Place
298 Main Street
Buffalo, New York 14202

and

The Cosgrove Firm
J. Michael Lennon, Esq., of counsel
525 Delaware Avenue
Buffalo, New York 14202

Attorneys for the Plaintiffs

Raymond C. Stilwell, Esq.
The Law Center Building
17 Beresford Court
Williamsville, New York 14221
Attorney for the Debtor/Defendant

Bucki, Chief U.S.B.J., W.D.N.Y.

08-14061B; AP08-1179B

Asserting the rights of a trust fund beneficiary under the Lien Law of New York, the plaintiffs in this adversary proceeding seek a declaration that their claim is nondischargeable because the underlying indebtedness results from the debtor's defalcation while acting in a fiduciary capacity. The primary issue is whether the plaintiffs have satisfied their burden to demonstrate the level of intent needed to establish defalcation under the standard of *Denton v. Hyman (In re Hyman)*, 502 F.3d 61 (2nd Cir. 2007).

Roxanne Dziedzic is a chiropractor who undertook to remodel a building that she already owned for use as a chiropractic office. To this end, she hired Charles and John Tiffany, who are contractors doing business under the name of Tiffany Construction. Under the terms of a proposal dated August 12, 2003, Tiffany Construction agreed to perform "remodeling & addition work," which was "to be done on a cost plus basis, with an approximate cost of $330,000." Shortly after work began in 2003,[1] Dr. Dziedzic borrowed $100,000, which she used to fund her initial advances to Tiffany Construction. Then on January 20, 2004, Dziedzic borrowed the additional sum of $223,106.61 from Alden State Bank and gave to the bank a mortgage for that amount on the building that she was remodeling. The present dispute involves the disposition of these additional proceeds.

Charles and John Tiffany completed their work on the remodeling project in July of 2004. They claim that the total contract price for their services was $327,746.32; that Roxanne Dziedzic made partial payments totaling $257,500; and accordingly, that the debtor owes them the net balance of $70,246.32. Refusing to make this final payment, Dr. Dziedzic filed a petition

---

[1]Although the contract proposal is dated August 12, 2003, the debtor testified that work began approximately two months earlier.

for relief under Chapter 7 of the Bankruptcy Code on September 15, 2008. In response to that petition, Charles and John Tiffany commenced the present adversary proceeding for a judgment declaring that the outstanding unpaid balance due to them is nondischargeable under 11 U.S.C. § 523(a)(4).

Section 523(a)(4) of the Bankruptcy Code states in relevant part that a discharge in Chapter 7 "does not discharge an individual debtor from any debt . . . (4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny." The plaintiffs contend that pursuant to Article 3-A of the New York Lien Law, the debtor held net mortgage proceeds as a trust fund for the benefit of Charles and John Tiffany. Section 24 of the Alden State Bank mortgage recites the basis for this trust. Referring to Roxanne Dziedzic in the first person, this paragraph reads as follows:

> I will receive all amounts lent to me by Lender subject to the trust fund provisions of Section 13 of the New York Lien Law. This means that I will: (a) hold all amounts which I receive and which I have a right to receive from Lender under the Note as a "trust fund;" and (b) use those amounts to pay for "cost of improvement" (as defined in Section 13 of the New York Lien Law) before I use them for any other purpose. The fact that I am holding those amounts as a "trust fund" means that for any building or other improvement located on the Property I have a special responsibility under the law to use the amount in the manner described in this Section 24.

Thus, Roxanne Dziedzic was acting in a fiduciary capacity when she disbursed the proceeds of her mortgage. The plaintiffs believe, however, that Dziedzic committed defalcation to the extent that she distributed proceeds to anyone other than Tiffany Construction.

The debtor does not dispute that Charles and John Tiffany enjoy the status of trust fund beneficiaries. By reason of the mortgage dated January 20, 2004, Roxanne Dziedzic received net proceeds of $215,996.97. The evidence at trial showed that Dziedzic deposited this entire sum into a checking account, and that from that account, she paid $157,500 to Tiffany Construction. From the trust corpus, therefore, Dziedzic disbursed $58,496.97 to parties other than the plaintiffs. Charles and John Tiffany argue that they are the only proper beneficiaries of the Lien Law trust and that disbursements to any other party would constitute a misapplication of trust funds. But without more, a claim based on such misapplication will merely duplicate part of a dischargeable debt for sums due under the Tiffany construction contract. For this reason, the plaintiffs seek a declaration that any claim for misapplied trust funds is nondischargeable under 11 U.S.C. § 523(a)(4) as a debt for "defalcation while acting in a fiduciary capacity."

In *Kawczynski v. Besroi Construction Corp.*, 442 F. Supp. 413 (W.D.N.Y. 1977), the District Court considered facts essentially identical to those in the present case. Although Kawczynski had filed his bankruptcy petition prior to the effective date of the current Bankruptcy Code, the then applicable Bankruptcy Act similarly provided that a discharge in bankruptcy would not release a debtor from liabilities created by "defalcation while acting as an officer or in any fiduciary capacity." BANKRUPTCY ACT § 17(a)(4), as formerly codified in 11 U.S.C. § 35(a)(4)(1976). As in the present instance, the plaintiff alleged that Kawczynski had violated his duties under the Lien Law by using trust funds to pay someone other than the beneficiaries of a Lien Law trust. Accordingly, two of the trust fund beneficiaries commenced an action in Bankruptcy Court for a judgment declaring their claims to be nondischargeable. The Bankruptcy Court denied the application, but on appeal, the District Court

reversed. It held that "the New York Lien Law creates a fiduciary relationship between the trustee and the trust fund beneficiaries for purposes of § 17(a)(4) of the Bankruptcy Act." 442 F. Supp. at 417. The District Court found that even though "the funds were used for legitimate business purposes such as paying various overhead expenses, these payments nevertheless amounted to a diversion of trust funds . . . ." *Id.* Declaring that "defalcation" would include even innocent defaults, the court concluded that the plaintiffs had claims that resulted from defalcation of the debtor while acting in a fiduciary capacity, and that those claims were therefore not discharged.

Prior to 2007, *Kawczynski v. Besroi Construction Corp.* would have compelled a ruling for the plaintiffs in the present instance. *See IRR Supply Centers, Inc. v. Phipps (In re Phipps)*, 217 B.R. 427 (Bankr. W.D.N.Y. 1998). However, the decision in *Kawczynski* was premised upon an understanding that the Second Circuit had interpreted "defalcation" to include innocent defaults. 442 F. Supp. at 418. Subsequently, the Court of Appeals rejected this assumption in *Denton v. Hyman (In re Hyman)*, 502 F.3d 61 (2nd Cir. 2007). Clarifying the scienter requirement for defalcation, the Court established the following standard:

> [D]efalcation under § 523(a)(4) requires a showing of conscious misbehavior or extreme recklessness – a showing akin to the showing required for scienter in the securities law context. We believe that these concepts – well understood and commonly applied in the securities law context – strike the proper balance under § 523(a)(4). This standard ensures that the term "defalcation" complements but does not dilute the other terms of the provision – "fraud," "embezzlement," and "larceny" – all of which require a showing of actual wrongful intent.

> By requiring the courts to make appropriate findings of conscious misbehavior or recklessness in the course of dischargeability litigation, the standard we adopt today insures that the harsh sanction of non-dischargeability is reserved for those who exhibit "some portion of misconduct." The standard does not reach fiduciaries who may have failed to account for funds or property for which they were responsible only as a consequence of negligence, inadvertence or similar conduct not shown to be sufficiently culpable.

502 F.3d at 68-69 (citations deleted). Under the standard of *Denton v. Hyman*, therefore, defalcation "requires a showing of conscious misbehavior or extreme recklessness." Accordingly, we must consider two issues: whether Dziedzic misused trust funds and whether any such misuse occurred with the requisite scienter.

From loan proceeds not paid to Tiffany Construction, Roxanne Dziedzic made three categories of disbursements. The first category totaled $24,136.25 and included the following construction expenses: $6,500 to Mark Hollfelder as payment for roofing and siding; $2,637.25 to Rich's Landscaping for lawn repair; $14,944 to CBL Snyder for woodwork; and $55 to the Village of Alden for a building permit. The second category involved the payment of $365 on account of bills, such as for photocopying expenses, that were unrelated to construction activity. Thirdly, Dziedzic disbursed $34,756.75 on account of credit card obligations. Altogether, the disbursements slightly exceed the loan proceeds and necessitated a small additional deposit into the account.

The plaintiffs insist that Dziedzic misapplied trust funds when she disbursed $24,136.25 for construction expenses other than those incurred through Tiffany Construction. Specifically, the plaintiffs assert three reasons

08-14061B; AP08-1179B

why these other distributees do not qualify as trust fund beneficiaries. The first is that some payments were on account of claims that arose prior to the execution of the mortgage. Lien Law § 13(3) provides that the trust fund clause of a mortgage operates to create a trust "for the purpose of paying the cost of the improvement." However, Lien Law § 2(5) states that unless a particular expense is itemized in the mortgage, the covered costs are those incurred after the execution of the mortgage. Plaintiff's second assertion is that Lien Law § 70(5) defines trust assets to include funds received "under a mortgage recorded subsequent to the commencement of the improvement and before the expiration of four months after completion of the improvement." Hence, the plaintiffs contend that trust beneficiaries would not include those claimants who may have started their work after the execution of the mortgage. Finally, the plaintiffs argue that still other distributions represented expenditures for items that would not qualify under Lien Law § 2(4) as the type of improvement for which the debtor could make payment from trust funds.

We need not now address whether Dziedzic misused trust funds when she paid remodeling expenses other than those owing to Tiffany Construction. Notwithstanding any technical violation of the Lien Law, the claim of defalcation with respect to these disbursements will fail for a lack of proof regarding the debtor's intent. Of course, a plaintiff can always present direct evidence of intent. Otherwise, the court must apply accepted standards of inference: "does the presence of a particular fact make a second fact more probable than not?" *Deere & Company v. Contella (In re Contella)*, 166 B.R. 26 (Bankr. W.D.N.Y. 1994). With regard to a trust arising under Article 3-A of the Lien Law, the court may infer a conscious misuse from expenditures that bear no relation to any construction activity. But the New York Lien Law is a

complex statute, particularly for someone like the debtor who does not work in either construction or the law. With regard to construction related expenditures, the fact of technical non-compliance will give equal suggestion to either a willful misuse or the possibility of a misunderstanding of statutory obligations. Here, the mere occurrence of non-conforming construction expenses will not by itself establish a misuse that was either conscious or extremely reckless. Nor did the plaintiffs present any other direct or circumstantial evidence regarding the debtor's state of mind in making her disbursements. Consequently, with respect to the first category of disbursements, the plaintiffs fail to establish that any misuse of trust funds has reached a level of defalcation within the meaning of section 523(a)(4).

Second, Dziedzic used $365 to pay bills which by her own admission had no relation to the remodeling project. Personally issuing and signing both checks, Dziedzic would have known the intended application of trust funds. Not only did these payments violate the Lien Law, but their total disconnect from construction activity will allow the court to infer the requisite degree of conscious misuse.

Third, Roxanne Dziedzic expended $34,756.75 on account of credit card balances. The court has reviewed the various charges that Dziedzic made with her credit cards from the date on which she started her renovation project through the date on which she effected payment from trust funds. Although the majority of charges involved expenditures for personal purposes, the evidence at trial showed that Dziedzic had used the credit cards to pay expenses related to construction activity in an amount totaling $12,120.43.[2]

---

[2] Specifically, the debtor used her Bank One Credit Card on December 12, 2003, to purchase appliances that would be affixed to the premises, at a cost of $5,219.81; on January 8, 2004, to purchase lighting fixtures at a cost of $1,125.33; on January 30, 2004, to purchase permanent filing cabinets at a cost of $2,686.89; and on February 23, 2004, to purchase painting supplies at a cost of

Again, we need not decide whether these construction expenses qualify as an appropriate use of trust funds. Rather, the deciding issue is whether the plaintiffs can carry their burden to show conscious misbehavior or extreme recklessness. The court recognizes that credit cards have become a common vehicle for payments of all kinds. Hence, the payment of a credit card balance does not necessarily imply a state of mind, but suggests instead a need to examine the character of the underlying expense. For the same reason that the court will not infer the requisite scienter from a direct payment of other construction expenses, the plaintiffs cannot establish conscious or reckless behavior from the mere fact that Dziedzic used trust funds to satisfy such expenses indirectly through payment of the balance due on her credit cards. On the other hand, to the extent that the debtor used a credit card to pay expenses having no relation to her remodeling project, payment on that credit card will indicate both a misapplication of trust funds and the basis to infer the consciousness of that misapplication.

Altogether, Roxanne Dziedzic disbursed $58,496.97 of trust funds to parties other than Charles and John Tiffany. However, the plaintiffs fail to prove either conscious misbehavior or recklessness in the debtor's direct disbursement of $24,136.25 for construction expenses, or in her credit card payments on account of construction expenses of $12,120.43. After subtracting these later two amounts, the possible defalcation of trust funds is reduced to $22,240.29. This sum represents moneys that Dziedzic disbursed either for direct payment of non-construction expenses or for payment on account of credit card obligations other than those which resulted from construction

---

$46.26. She also used her Bank of America Credit Card to purchase lighting fixtures on November 20, 2003, at a cost of $900; brass fixtures on January 5, 2004, at a cost of $636.94; and brass fixtures on January 10, 2004, at a cost of $21. Finally, Dziedzic used the Bank of America Credit Card to pay monthly storage fees that accrued from the start of construction in June 2003 through January 2004, at a total cost of $1,484.20.

expenditures. As a conscious misapplication of trust funds, this use of $22,240.29 represents a defalcation while acting in a fiduciary capacity.

Roxanne Dziedzic incurred other expenses in connection with her remodeling project, but these were paid from sources other than loan proceeds and therefore have no relevance to the propriety of her use of trust funds. Under New York law, "[t]he return of an allegedly improper transfer is recognized as a defense" to the misuse of trust funds. *Raisler Corp. v. Uris 55 Water Street Co.*, 91 Misc.2d 217, 222 (Sup. Ct. 1977). Here, however, the debtor never replenished the funds available to pay the claims of Charles and John Tiffany. The mere use of resources to pay other contractors for additional work does not constitute a restoration of trust funds and will not excuse the debtor's earlier misappropriation. Accordingly, the court will grant judgment declaring that the principal sum of $22,240.29 is nondischargeable.

Finally, the plaintiffs request interest on the nondischargeable portion of the obligation from July 18, 2004, that being the date on which they first demanded payment. As to this issue, I agree with the analysis of Judge Duberstein in *Sculler v. Rosen (In re Rosen)* 232 B.R. 284, 297 (Bankr. E.D.N.Y. 1999):

> Courts will award prejudgment interest in situations where a federal law has been violated. . . . Courts have found that a nondischargeability action pursuant to 11 U.S.C. §523(a) arises from federal law, specifically the federal Bankruptcy Code, and therefore a court may make an award of prejudgment interest on amounts found to be nondischargeable.

Here as well, particularly because Dziedzic breached her fiduciary obligations, she should pay pre-judgment interest at a rate that will allow a fair recovery of the value that Charles and John Tiffany would have received but for the debtor's defalcation. This leaves then only the question of an appropriate rate

of interest. The court in *Rosen* held that because dischargeability is a matter of federal law, "the interest rate in this proceeding clearly should be governed by federal law." 232 B.R. at 298. For the same reasons that compelled a similar outcome in *CNB International, Inc., v. Kelleher (In re CNB International, Inc.)*, 393 B.R. 306, 336 (Bankr. W.D.N.Y. 2008), *aff'd as to this issue*, 440 B.R. 31, 46-47 (W.D.N.Y. 2010), we will apply the average of the weekly 1 year constant maturity Treasury yields for the period of time between the demand for payment and the date of this order. This average comes to 2.421566 %. As applied to a principal liability of $22,240.29, interest will total $ 3,765.52. Accordingly, the court will enter judgment for the sum of $26,005.81, together with interest on this latter amount from the date of this opinion at the current federal rate of 0.19 %.

       So ordered.

Dated:    Buffalo, New York   __/s/     CARL L. BUCKI__
              July 15, 2011     Carl L. Bucki, Chief U.S.B.J., W.D.N.Y.